IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JULIAN C. TORREZ, | ) | CASE NO. 3:16CV00918 |
| | ) | |
| Plaintiff, | ) | JUDGE JACK ZOUHARY |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **REPORT AND** |
| Defendant. | ) | **RECOMMENDATION** |

Plaintiff, Julian C. Torrez ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for preparation of a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

1

**I. PROCEDURAL HISTORY**

On July 16, 2010, Plaintiff filed applications for DIB and SSI alleging a disability onset date of January 1, 2008 and claiming he was disabled due to dizziness, weakness, memory problems, and head, neck, and back pain. (Transcript ("Tr.") 44, 318-323). The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (Tr. 186-87).

On December 13, 2011, an ALJ held a hearing, during which Plaintiff, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 61-105). On January 26, 2012, the ALJ issued a written decision finding Plaintiff was not disabled. (Tr. 110-125).

On June 8, 2013, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings. Specifically, the Appeals Council ordered that the ALJ obtain additional evidence of Plaintiff's status-post head injury, depressive disorder, history of marijuana abuse, and post-traumatic stress disorder; that the ALJ further evaluate Plaintiff's subjective complaints and provide appropriate rationale; and that the ALJ further evaluate Plaintiff's work history. (Tr. 128-29).

On April 20, 2015, the ALJ held a new hearing at which Plaintiff and a vocational expert testified. (Tr. 39-60). The ALJ issued a new decision on May 6, 2015, again finding Plaintiff not disabled. (Tr. 7-38). On February 12, 2016, the Appeals Council denied Plaintiff's request for review, and the ALJ' s decision became the Commissioner's final decision. (Tr. Tr. 1-3).

On April 16, 2016, Plaintiff filed his complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. No. 13, 15). Plaintiff asserts the ALJ erred (1) by concluding that Plaintiff's medically determinable

impairments did not include post-concussive syndrome; and (2) by declining to afford significant weight to the opinion of non-treating and non-examining source Dr. Borrillo. (Doc. No. 13).

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was born on March 30, 1990 and was twenty-five years-old at the time of the ALJ's decision. (Tr. 318). Plaintiff left school in the ninth grade. He is able to communicate in English. (*Id.*) He has past relevant work as a forklift driver/lawn maintenance worker and as a pool attendant. (Tr. 52-53).

### B. Medical and Opinion Evidence

On April 21, 2008, Plaintiff was transported to the emergency room after he lost control of a motorcycle, struck a curb, and flew over the handlebars. (Tr. 557-58). He was not wearing a helmet. (Tr. 558). He lost consciousness and exhibited confusion at the scene. (Tr. 557-58). A CT scan of Plaintiff's brain revealed a right frontal bone fracture and a 10 millimeter right frontal epidural hematoma. (Tr. 575). A surgeon performed a right frontal craniotomy and evacuated the hematoma. (Tr. 654). Plaintiff underwent a physical therapy evaluation. (Tr. 601-02). Examination findings were normal, but Plaintiff endorsed dizziness when standing up. (Tr. 601). The physical therapist noted good rehab potential and recommended discharge. (Tr. 602).

On May 3, 2008, Plaintiff returned to the emergency room after reportedly slipping and falling down the stairs. (Tr. 551). A CAT scan showed status post evacuation of the right epidural hematoma with a small subdural remaining. (Tr. 552). The physician diagnosed status post fall with right forehead contusion. (Tr. 552). Plaintiff was discharged. (Tr. 552).

On December 2, 2008, Plaintiff presented in the emergency room after a motor vehicle accident. (Tr. 537). While traveling between thirty and forty miles per hour, an intoxicated driver lost control of the vehicle in which Plaintiff was a front seat passenger, crashing into a fire hydrant. (Tr. 537). Plaintiff was not wearing a seatbelt, and he hit his head on the windshield. (Tr. 537). After being transported to the hospital, Plaintiff denied having lost consciousness, reported having vomited, and complained of a headache. (*Id.*). On examination, Plaintiff had no neurologic deficits, and a CT scan of Plaintiff's brain showed no evidence of acute bleed. (Tr. 538, 541).

On April 21, 2009, Plaintiff presented at the emergency room with complaints of a head injury after having been struck on the head by multiple assailants. (Tr. 524). Plaintiff complained of headache, dizziness, and blurred vision and rated his pain at 8 out of 10. (Tr. 524). Plaintiff denied loss of consciousness. (Tr. 524). The physician observed contusions and mild swelling. (Tr. 524). A CT scan of Plaintiff's brain was negative for acute process. (Tr. 524, 530-31). On examination, Plaintiff exhibited no neurologic deficits. (Tr. 529-30). Plaintiff was discharged in stable condition. (Tr. 530).

Plaintiff visited the emergency room on September 24, 2009, complaining of chronic headaches. (Tr. 509). The pain was described as constant, throbbing, and radiating across his entire head. Plaintiff endorsed light and sound sensitivity, nausea, and fever. (Tr. 510). On examination, Plaintiff exhibited no neurologic deficits. (Tr. 511). A CT scan of the brain was negative. (Tr. 515, 520).

4

Plaintiff was treated for back and head pain in May, June, and July of 2010. (Tr. 606, 608, 621). Plaintiff reported anxiety and panic attacks. (Tr. 606, 608). Plaintiff was prescribed Tylenol #3 and Percocet for pain. (Tr. 606, 621).

On October 6, 2010, Ivan Lewis Slavich, D.O. performed a physical evaluation of Plaintiff. (Tr. 626-627). Plaintiff reported headaches, anxiety, depression and nightmares since his April 2008 motorcycle accident. (Tr. 626). On examination, Plaintiff had normal cervical range of motion, normal grip strength, normal range of motion in his extremities, and normal gait; he was able to squat; and he had no sensory deficits. (Tr. 627). Plaintiff was diagnosed with post-traumatic headache, anxiety disorder, and probable posttraumatic stress disorder (PTSD). (Tr. 627). Dr. Slavich opined:

> Based on my medical findings, from a physical point of view the patient does not have significant impairments to preclude him from doing work related activites such as sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking, and traveling. As far as his other complaints, I would suggest psychiatric evaluation to determine the extent of his impairments in that regard.

(Tr. 627).

On October 8, 2010, John Gam, Ph.D., performed a psychological evaluation. (Tr. 629-32). Plaintiff reported dizziness, anxiety, and panic attacks as a result of the April 2008 motorcycle accident. (Tr. 629). Dr. Gam assessed constricted affect, depressive mood, impaired intellect, and impaired memory, concentration, and attention. Plaintiff's ability for calculation was fair; his ability for abstraction was impaired; and his insight and judgment were concrete. (Tr. 631). Dr. Gam noted that Plaintiff was "very dramatic" and that there were indications of probable malingering. (Tr. 531). He assessed a GAF score of 55. (Tr. 531).

5

Dr. Gam concluded that Plaintiff had no impairment in his ability to comprehend, carry out and remember simple instructions; moderate impairment in his ability to comprehend, carry out, and remember complex instructions; mild impairment in his ability to respond appropriately to supervision, coworkers, and work pressures in a work setting; no impairment in his ability to make simple work decisions; moderate impairment in his ability to maintain concentration and pace for more than two hours; moderate impairment in ability to adapt to change at work; mild impairment in his ability to manage his activities of daily living; and mild impairment in his ability to function socially. (Tr. 632).

Sinching Chiu, M.D. treated Plaintiff from February 2011 to May 2012. (Tr. 659-78). During that time, Dr. Chiu assessed hypertension, anxiety, PTSD, headache, and chronic neck and back pain. (Tr. 659-78). On examination, Plaintiff exhibited neck stiffness with some tenderness over upper trapezius; generalized muscle tightness over the lower back; strong and symmetrical pulses, and full range of joint movement. (Tr. 661). Plaintiff was encouraged to quit smoking marijuana and cigarettes; to exercise daily; and to lose weight. (Tr. 659-60, 662, 664-665, 678). Plaintiff was prescribed Oxycontin and Percocet for pain. (*Id.*). On May 16, 2012, Plaintiff reported that he just got a job, and Dr. Chiu reported that Plaintiff was "doing very well." (Tr. 659).

On March 30, 2015, Donato Borrillo, M.D. reviewed Plaintiff's medical records and made the following assessment:

> Based solely on the medical record, in my medical opinion, he suffers from post-concussive syndrome and is unable to perform sustained remunerative employment. His condition is chronic, not likely to improve, and is permanent in nature. Furthermore, the combined injuries and medical conditions prevent Mr. Torres [sic] from performing sedentary work as defined by the Dictionary of Occupational Titles.

Lastly, Mr. Torrez is not a good candidate for retraining or vocational rehabilitation.

(Tr. 706) (footnote omitted).

### D. Hearing Testimony

The VE testified Plaintiff had past work as a forklift driver/lawn maintenance worker and as a pool attendant. (Tr. 53) The ALJ posed the following hypothetical question:

> Assume that a hypothetical individual of the claimant's age, education, and work experience has the residual functional capacity for work at any exertional level; postural limitations of no climbing of ladders, ropes, or scaffolds; environmental limitation to avoid concentrated exposure to hazards, such as moving machinery and unprotected heights; work limited to simple, routine, and repetitive tasks in a work environment free from fast-paced production requirements, such as moving assembly lines and conveyor belts, involving only work-related decisions with few, if any, work place changes.

(Tr. 53). The ALJ included the additional limitation that there be only occasional interaction with the general public, coworkers, and supervisors. (Tr. 55).

The VE testified the hypothetical individual would not be able to perform past work. (Tr. 55). The VE explained, however, that the hypothetical individual would be able to perform other representative jobs in the economy, such as dishwasher and automobile detailer. (Tr. 54, 55).

### III. STANDARD FOR DISABILITY

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).1

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits,

a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4). *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment or combination of impairments does not prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. Born on March 30, 1990, the claimant had not attained age 22 as of January 1, 2008, the alleged onset date (20 CFR 404.102, 416.120(c)(4) and 404.350(a)(5)).

2. The claimant engaged in substantial gainful activity during the following periods: June 1, 2008 to December 31, 2008 (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).

3. However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

4. The claimant has the following severe impairments: skull fracture, status-post craniotomy, with back pain and headaches; depressive disorder; substance (cannabis) abuse; and anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

6. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except postural limitation of no climbing of ladders, ropes, or scaffolds; environmental limitation to avoid concentrated exposure to hazards, such as moving machinery and unprotected heights; work limited to simple, routine, and repetitive tasks in a work environment free from fast paced production requirements, such as a moving assembly lines and conveyor belts, involving only working-related decisions, with few, if any, workplace changes; occasional interaction with the general public, coworkers, and supervisors.

7. At all times relevant to this decision, the claimant has been unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

8. The claimant was born on March 30, 1990 and was 17 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

> 9. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
> 10. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
> 12. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2008, through the date of this decision (20 CFR 404.350(a)(5), 404.1520(g) and 416.920(g)).

(Tr. 14-31).

### V.  STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165 at * 2 (6th Cir. April 1, 2011).  Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.  *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make

credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do

not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996); accord *Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

### VI.     ANALYSIS

Plaintiff first argues that the ALJ erred by concluding that Plaintiff's medically determinable impairments did not include post-concussive syndrome. (Doc. No. 13 at 5).

Under the regulations, a medically determinable impairment

> must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms

20 C.F.R. § 416.908. Further, the regulations require "evidence from 'acceptable medical sources' to establish the existence of a medically determinable impairment." SSR 06-03P, 2006 WL 2329939, at *2; 20 CFR 404.1513(a) and 416.913(a). "[U]nder no circumstances may the existence of an impairment be established on the basis of symptoms alone." SSR 96-4P, 1996 WL 374187, at *1 (S.S.A. July 2, 1996).

Here, the ALJ did not err when he concluded that Plaintiff's medically determinable impairments did not include post-concussive syndrome. The ALJ observed that "there is no objective medical evidence that documents a diagnosis of post-concussion syndrome that resulted from anatomical, physiological, or psychological abnormalities that are demonstrable by

12

medically acceptable clinical or laboratory diagnostic techniques." Indeed, on the Court's review of the record, it is apparent that not one physician who actually treated or examined Plaintiff made a diagnosis of post-concussive syndrome. Plaintiff points to medical evidence of four separate head injuries, contusions, swelling, and a right frontal epidural hematoma. This evidence *may* be relevant to a post-concussive diagnosis, but neither Plaintiff nor the Court possesses the medical expertise to assess post-concussive syndrome in light of these symptoms.

Plaintiff does point out that in 2015, non-examining and non-treating medical source Dr. Borrillo opined that Plaintiff suffered from post-concussive syndrome. However, the ALJ declined to afford Dr. Borrillo's opinion significant weight, because "he did not personally examine, evaluate, or question the claimant." (Tr. 27). The ALJ indicated Dr. Borrillo's 2015 report was based only on Plaintiff's medical records up to May 2012. (Tr. 21). And the ALJ further questioned whether Dr. Borrillo was an impartial medical source, because he was contracted specifically to prepare the report for this case. (Tr. 28).

The ALJ properly weighed and discounted Dr. Borrillo's opinion. When weighing a medical opinion, an ALJ may consider the examining relationship, the treatment relationship, length of treatment relationship, nature and extent of the treatment relationship, supportability, consistency, specialization, and other relevant factors. 20 C.F.R. § 404.1527(c). Here, the ALJ properly noted that Dr. Borrillo's assessment was not based on a personal examination. He also properly considered the opinion's supportability by pointing out that Dr. Borrillo's 2015 opinion was only based on a review of Plaintiff's medical records up to May 2012. Dr. Borillo provided no explanation how Plaintiff met the diagnostic criteria for post-concussive syndrome, and there is no apparent medical or factual basis for concluding that his post-concussive syndrome

13

persisted and prevented him from working through 2015. *See Buxton v. Halter*, 246 f. 3d 762, 773 (6th Cir. 2001) ("[T]he ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.").

Given the lack of supportability, the ALJ did not err when questioning the credibility of Dr. Borrillo. It is well-established that it is the ALJ's role to resolve conflicts in the evidence and to decide questions of credibility. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994); *See also Saelee v. Chater*, 94 F.3d 520, 522-23 (9th Cir. 1996), as amended (Aug. 12, 1996) (ALJ may question a doctor's credibility where the doctor's opinion letter had been solicited by the claimant's counsel).

The Court also rejects Plaintiff's claim that the ALJ failed to follow the order of the Appeals Council which directed that the ALJ obtain further evidence of Plaintiff's status post head injury. It is evident that the ALJ made an effort to do so, but the scheduled consultative examination was cancelled because Plaintiff was incarcerated at the time. The Division of Disability Determination was unable to accommodate the request for a consultative examination of an incarcerated claimant. (Tr. 16, 496-98). In addition, during the hearing, Plaintiff's counsel affirmed that the record was complete and that no outstanding records were pending. Counsel for plaintiff made no further requests for assistance in obtaining medical records. (Tr. 21).

In sum, Plaintiff's assignments of error have no merit: the ALJ's rejection of the opinion of Dr. Borrillo was not error, and the ALJ appropriately concluded that Plaintiff's medically determinable impairments did not include post-concussive syndrome.

## VII. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

                                                                s/ Jonathan D. Greenberg
                                                                 Jonathan D. Greenberg
                                                                 United States Magistrate Judge

Date: February 6, 2017

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. **28 U.S.C. § 636(b)(1). Failure to** file objections within the specified time may waive the right to appeal the District Court's order. *See* United States v. Walters, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).